## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MARGARITA MALDONADO**, | **CASE NO.: 1:21-cv-04481** |
| Plaintiff, | |
| vs. | **Hon. Robert M. Dow, Jr.** |
| | **Hon. Gabriel A. Fuentes** |
| **CREDIT CONTROL SERVICES, INC. D/B/A CREDIT COLLECTION SERVICES,** | |
| Defendant. | |

## DEFENDANT CREDIT CONTROL SERVICES, INC., DOING BUSINESS AS CREDIT COLLECTION SERVICES' ANSWER AND AFFIRMATIVE DEFENSES

AND NOW comes Defendant Credit Control Services, Inc., d/b/a Credit Collection Services ("CCS"), by and through its undersigned counsel, Gordon Rees Scully Mansukhani, LLP, and hereby answers the Class Action Complaint brought by Plaintiff Margarita Maldonado ("Plaintiff"). In support thereof, CCS avers as follows:

### NATURE OF THE CASE

1.    The FDCPA is a broad, remedial statute that prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts.

1

**ANSWER: Admitted in part and denied in part. CCS admits that Plaintiff references the FDCPA and its provisions in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA, it is denied.**

2. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, -.to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

**ANSWER: Admitted in part and denied in part. CCS admits that Plaintiff quotes from a portion of the FDCPA in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA, it is denied.**

3. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) - 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. See 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

**ANSWER: Admitted in part and denied in part. CCS admits that Plaintiff quotes from a portion of the FDCPA in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA, it is denied. Furthermore, CCS denies Plaintiff's characterization of the FDCPA.**

4.    To this end, the FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. Crabill v. Trans Union, LLC, 259 F.3d 662, 666 (7th Cir. 2001).

**ANSWER: Admitted in part and denied in part.  CCS admits that Plaintiff quotes from *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001) in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA, it is denied.**

5.    Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct" and that "[t]his intent cannot be underestimated." Ramirez v. Apex Financial Management LLC, 567 F. Supp. 2d 1035, 1042 (N.D. Ill. 2008).

**ANSWER: Admitted in part and denied in part.  CCS admits that Plaintiff quotes from *Ramirez v. Apex Fin. Mgmt. LLC*, 567 F. Supp.2d 1035, 1042 (N.D. Ill. 2008) in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA, it is denied.**

6.    Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. § 1692 et seq.

**ANSWER: Admitted in part and denied in part.  CCS admits that Plaintiff alleges that she seeks to enforce the policies and "civil rights" that are expressed through the FDCPA in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA, it is denied.**

## JURISDICTION AND VENUE

7. "An action to enforce any liability created by [the FDCPA] may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (emphasis added).

**ANSWER: Admitted in part and denied in part. CCS admits that Plaintiff quotes from a portion of the FDCPA in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA, it is denied.**

8. Jurisdiction over Defendant is proper under 735 ILCS 5/2-209(a)(l) (transaction of any business within this State), section 2-209(b)(4) (corporation doing business within this State), and section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).

**ANSWERL Denied. CCS denies the allegations in this paragraph as they call for conclusions of law. CCS refers all questions of law to the Court.**

9. Credit Collection Services collects debts from consumers in Illinois.

**ANSWER: Admitted in part and denied in part. CCS admits that, at times, it collects debts from consumers in Illinois. CCS denies all remaining allegations of this paragraph.**

10. Venue is proper in this County pursuant to 735 ILCS 5/2-101, because this is the county in which the transactions and occurrences at issue,

or some part thereof, occurred. In addition, Defendant regularly does business in this County.

**ANSWER: Denied. CCS denies the allegations in this paragraph as they call for conclusions of law. CCS refers all questions of law to the Court.**

11. Pursuant to General Order No. 1.2 of the Circuit Court of Cook County, this action is properly before the Chancery Division of the County Department because it is a putative Class Action.

**ANSWER: Denied. CCS denies the allegations in this paragraph as they call for conclusions of law. CCS refers all questions of law to the Court.**

## PARTIES

12. Plaintiff is a resident of the State of Illinois, from whom Defendant attempted to collect a debt allegedly owed for a delinquent account (the "Account") owed to Laboratory Corporation of America Holdings ("Labcorp").

**ANSWER: Admitted in part and denied in part. CCS admits, on information and belief, that Plaintiff is a resident of the State of Illinois, but lacks sufficient knowledge or information to admit or deny that Plaintiff resided in Illinois at all times relevant to this action and therefore denies same. Further responding, CCS admits that it attempted to collect a delinquent obligation that Plaintiff incurred (the "Account") and owed to Laboratory Corporation of America Holdings, d/b/a Labcorp ("Labcorp").**

13. Defendant Credit Control Services, Inc. d/b/a Credit Collection Services ("CSS" or "Defendant") is a Delaware corporation that does or transacts

business in the State of Illinois. Its registered agent is CT Corporation System, located at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

**ANSWER: Admitted in part and denied in part. CCS admits that it is a corporation organized under the laws of Delaware that, at times, does business in the State of Illinois via means of interstate commerce and that CT Corporation System, located at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604, is its registered agent in the State of Illinois. Unless otherwise admitted, CCS denies the allegations in this paragraph.**

14. CSS is engaged in the business of a collection agency, using the mails and telephone to collect defaulted consumer debts on behalf of other entities.

**ANSWER: Admitted in part and denied in part. CCS admits that, at times, it engages in the business of a collection agency and uses the mails and telephone to collect valid, defaulted consumer debts on behalf of other entities. CCS denies all remaining allegations in this paragraph.**

15. CSS holds a collection agency license from the State of Illinois.

**ANSWER: Admitted.**

16. CSS regularly collects or attempts to collect defaulted consumer debts on behalf of others, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

**ANSWER: Admitted in part and denied in part. CCS admits that, at times, it engages in the practices of collection debts owed to others and that, at times, it acts as a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the**

6

**FDCPA. At this time CCS lacks knowledge or information sufficient to form a belief as to the remainder of 16, and those allegations are denied.**

<u>**FACTUAL ALLEGATIONS**</u>

17. Plaintiff incurred a debt, creating the Account.

**ANSWER: Admitted. CCS admits that based upon a review of its records, Plaintiff had a due and owing balance of $25.00 on the Account.**

18. Plaintiff used the Account for personal, family, and household purchases.

**ANSWER: CCS admits that, typically, medical debts are incurred for personal or family purposes. At this time, however, CCS lacks knowledge or information sufficient to form a belief as to this specific allegation.**

19. The Account is a ".debt" as that term is defined at§ 1692a(5) of the FDCPA.

**ANSWER: At this time, however, CCS lacks knowledge or information sufficient to form a belief as to this specific allegation.**

20. The Account went into default.

**ANSWER: Admitted. CCS admits that based upon a review of its records, the Account went into default.**

21. CSS subsequently began collection activities on the Account.

**ANSWER: Admitted. CCS admits that after the Account went into default, it began collection activities thereon.**

22. On or about November 11, 2020, CMS mailed Plaintiff a collection letter (the "Letter") in an attempt to collect the Account from Plaintiff. (Exhibit A, Letter).

7

**ANSWER: Admitted.**

23.     The Letter conveyed various information regarding the Account, including the amount owed, the identity of the original creditor, and an account number.

**ANSWER: Admitted in part and denied in part. CCS admits that the Letter conveyed to Plaintiff various information regarding the Account, including the amount owed, the identity of the creditor to whom the debt was owed and an account number. Unless otherwise admitted, the allegations in this paragraph are denied.**

24.     The Letter was a "communication" as that term is defined at § 1692a(2) of the FDCPA.

**ANSWER: Denied.  CCS denies the allegations in this paragraph as they call for conclusions of law.  CCS refers all questions of law to the Court.**

25.     The Letter is a form letter.

**ANSWER: Denied. CCS objects to the phrase "form letter" as vague and therefore denies the allegations of this paragraph.**

26.     Plaintiff read the Letter.

**ANSWER: Denied. CCS lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph.  As such, the allegations are denied.**

27.     The Letter bears markings that are characteristic of ones generated by a letter vendor, including numbers and bar codes around the edges of the Letter.

**ANSWER: Denied. CCS objects to the descriptor "markings that are characteristic of ones generated by letter vendor" as vague and therefore denies the allegations of this paragraph.**

28.     On information and belief, these markings are used to identify the letter template and client being serviced by the letter vendor.

**ANSWER: Denied. CCS objects to the descriptor "markings that are characteristic of ones generated by letter vendor" as vague, such that this paragraph's reference to "these markings" is vague as well. CCS therefore denies the allegations of this paragraph.**

29.     CSS caused a letter vendor to send the Letter to Plaintiff.

**ANSWER: Admitted in part and denied in part.  CCS admits that it used the services of a letter vendor for the ministerial tasks of printing, folding, and mailing the Letter.  Unless otherwise admitted, CCS denies these allegations.**

30.     In order to have the letter vendor send Plaintiff the Letter, Defendant had to furnish the vendor with Plaintiffs name and address, the status of Plaintiff as a debtor, details of Plaintiffs Account, and other personal information.

**ANSWER: Admitted in part and denied in part. CCS admits that in order to have the letter vendor mail Plaintiff the Letter, it had to furnish the vendor the information to include in the letter. Unless otherwise admitted, the allegations in this paragraph are denied.**

31.     The letter vendor then populated some or all of this information into a prewritten template, which was printed and mailed to Plaintiff on behalf of CSS in order to collect the Account.

**ANSWER: Admitted in part and denied in part. CCS admits that it contracted with a registered commercial mail vendor whose compliance, data security and privacy practices meet or exceed industry standards to act as CCS' remote print and mail room in order to print and mail to Plaintiff a letter regarding her debt. Unless otherwise admitted, the allegations in this paragraph are denied.**

32. CSS's communication to the letter vendor was in connection with the collection of a debt since it involved disclosure of the debt to a third party with the objective being communication with and motivation of the consumer to pay the debt.

**ANSWER: Denied. CCS denies that the incidental and ministerial transfer of electronic information to a "back office" vendor is a communication *in connection with the collection of a debt*. *See* FTC staff commentary, Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50,097-02, 50,104 (Dec. 13 1988); *see also White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) ("The Fair Debt Collection Practices Act is not aimed at ... companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters"). CCS denies that § 1692c(b) of the FDCPA precludes communications "with respect to" or "regarding" a debt, just communications "in connection with the collection of any debt" and denies that the transfer of electronic data to a medium, *i.e.*, a letter vendor, is a "communication in connection with the collection of a debt" prohibited by § 1692c(b) of the FDCPA. Furthermore, "for a communication to be in**

**connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor."** *Gruden v. Leikin Ingber & Winters PC*, **643 F.3d 169, 173 (6th Cir. 2011);** *see also Gburek v. Litton Loan Serv. LP*, **614 F.3d 380, 385 (7th Cir. 2010). CCS denies that the animating purpose of any communication with a vendor was to collect; rather, it was to use that vendor as a remote print and mail room.**

33. Plaintiff did not consent to having her personal and confidential information, concerning the Account or otherwise, shared with anyone else.

**ANSWER: Denied. CCS lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.**

34. In limiting disclosures to third parties, the FDCPA states, at 15 U.S.C. §1692c(b):

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector... a debt collector may not communicate, in connection with the collection of any debt, with any person other than .the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

**ANSWER: Admitted in part and denied in part. CCS admits that Plaintiff quotes from a portion of the FDCPA in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA, it is denied.**

35.     Section 1692b allows debt collectors to communicate with third parties only for the purpose of acquiring "location information" regarding the debtor, and then only if they do not state that the consumer owes any debt.

**ANSWER: Denied.  CCS denies the allegations in this paragraph as they call for conclusions of law.  CCS refers all questions of law to the Court.**

36.     The mass-mail vendor used by CSS as part of its debt collection effort against Plaintiff does not fall within any permitted exception provided for in 15 U.S.C. §l 692c(b).

**ANSWER: Denied.**

37.     If a debt collector "conveys information regarding the debt to a third party informs the third party that the debt exists or provides information about the details of the debt, then the debtor may well be harmed by the spread of this information." Brown v. Van Ru Credit Corp., 804 F.3d 740, 743 (6th Cir. 2015).

**ANSWER: Admitted in part and denied in part.  CCS admits that Plaintiff quotes from *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015) in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA, it is denied. Further responding, CCS denies that Plaintiff was harmed by the incidental and ministerial transfer of electronic information to a back office vendor to print and mail the Letter.**

38.     Plaintiff's privacy was invaded when CSS communicated with the third-party mailing vendor in connection with the collection of a debt. The letter vendor learned that Plaintiff owed a consumer credit debt, to whom the debt was owed, the

age of the debt, and the amount of the debt. The mass mailer also learned the address of Plaintiff.

**ANSWER: Denied. CCS denies the letter vendor learned any information about Plaintiff through a transfer of information between computer servers and further denies that Plaintiff's privacy could possibly be invaded by the incidental and ministerial transfer of electronic information to a back office letter vendor.** *See* **FTC staff commentary, Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50,097-02, 50,104 (Dec. 13 1988);** *White v. Goodman,* **200 F.3d 1016, 1019 (7th Cir. 2000) ("The Fair Debt Collection Practices Act is not aimed at ... companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters"). CCS denies that Section 1692c(b) of the FDCPA precludes communications "with respect to" or "regarding" a debt, just communications "in connection with the collection of any debt" and denies that the transfer of electronic data to a medium,** *i.e.,* **a letter vendor, is a "communication in connection with the collection of a debt" prohibited by Section 1692c(b) of the FDCPA.**

39.    The Letter was sent in an envelope with a glassine window through which numbers and bar codes were visible. (Exhibit B, Envelope).

**ANSWER: Denied. The envelope is a writing that speaks for itself. CCS denies the allegations of this paragraph to the extent they mischaracterize that writing.**

13

40. The FDCPA prohibits using an envelope that contains any language or symbols other than the debt collector's address or its business name.

**ANSWER: Denied.**

41. 15 U.S.C. § 1692f of the FDCPA provides as follows:

> Unfair practices
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ... (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business. . . .

**ANSWER: Admitted in part and denied in part. CCS admits that Plaintiff quotes from a portion of the FDCPA in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA, it is denied.**

42. Thus, the presence of the numbers and bar code visible on the face of the envelope violated§ 1692f(8).

**ANSWER: Denied.**

43. CSS used an unfair practice to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f(8), when it sent Plaintiff a collection letter that contained symbols other than its address or business name on the envelope.

**ANSWER: Denied.**

44. The inclusion of any language that is not CSS's business name or address violates § 1692f(8). Preston v. Midland Credit Mgmt., 948 F.3d 772, 784

(7th Cir. 2020) (finding an FDCPA violation based on the inclusion of "TIME SENSITIVE DOCUMENT" on an envelope) (emphasis in the original).

**ANSWER: Denied.**

45.    The U.S. Court of Appeals for the Seventh Circuit has confirmed what the statute already makes clear: no language or symbol other than the debt collector's name and address is permitted. Id. (finding no exception even for so-called "benign language" on an envelope).

**ANSWER: Denied.  CCS denies the allegations in this paragraph as they call for conclusions of law.  CCS refers all questions of law to the Court.**

46.    Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. See Gammon v. GC Services, Ltd. Partnership, 27 F3d 1254, 1257 (7th Cir. 1994).

**ANSWER: Denied.  CCS denies the allegations in this paragraph as they call for conclusions of law.  CCS refers all questions of law to the Court.**

## CLASS ALLEGATIONS

47.    Plaintiff brings this action individually and as a class on behalf of (1) all persons similarly situated in the State of Illinois (2) from whom CSS attempted to collect a Labcorp account (3) by sending a letter through a third-party mailing vendor (4) in an envelope with a glassine envelope through which numbers and bar codes were visible, and was (5) sent between one year prior to the filing of this Class Action Complaint up to the filing of this Class Action Complaint (the "Class").

**ANSWER: Admitted in part and denied in part. CCS admits that Plaintiff attempts to seek certification of a class defined as "(1) all persons similarly situated in the State of Illinois (2) from whom CCS attempted to collect a Labcorp account (3) by sending a letter through a third-party mailing vendor (4) in an envelope with a glassine envelope through which numbers and bar codes were visible, and was (5) sent between one year prior to the filing of this Class Action Complaint up to the filing of this Class Action Complaint (the "Putative Class").**

48.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

**ANSWER:  Denied.  CCS denies the allegations in this paragraph.**

49.     The proposed classes meet all requirements under 735 ILCS 5/2-801.

**ANSWER:  Denied.  CCS denies the allegations in this paragraph.**

50.     Numerosity: Upon information and believe, the Class is so numerous that joinder of all individual plaintiffs would be impracticable. The exact number of members of the Class are presently unknown and can only be ascertained through discovery because that information is exclusively in the possession of Defendant. However, it is reasonable to infer that more than 40 Illinois consumers received a letter materially identical to Exhibit A hereto given that it is a form letter.  Members of the Class can be easily identified through Defendant's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice

16

dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

**ANSWER: Denied. CCS denies the allegations in this paragraph as they call for conclusions of law. CCS refers all questions of law to the Court. CCS further denies that the complaint alleges multiple classes.**

51.     Commonality and Predominance: Plaintiffs claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class.

**ANSWER: Denied. CCS denies that Plaintiff's claims are typical of the claims of the Putative Class. CCS further denies that common questions of law or fact outweigh the individual issues presented, thereby precluding class treatment in this matter. Further, CCS denies that class treatment is superior to other available methods for the efficient adjudication of this controversy. CCS denies engaging in any conduct in connection with Plaintiff that could be deemed violative of the FDCPA and denies any liability to Plaintiff.**

52.     Adequacy of Representation: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she intends to prosecute this action vigorously. Plaintiff has retained counsel competent and experienced in class action litigation. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel and Plaintiffs claim is typical of the claims of the class members.

**ANSWER: Denied. CCS denies that Plaintiff would fairly and adequately protect the interest of her Putative Class and denies that Plaintiff's counsel possesses the necessary experience to serve as class counsel. Two of Plaintiff's attorneys have a history of unethical, dishonest, and incompetent conduct that renders them inadequate to serve as class counsel.** *See* **Exhibit A. While Ms. Maldonado is not the subject of such orders, his decision to align himself with attorneys Wood and Chatman renders him inadequate. CCS further denies that there are common questions of law and fact that predominate over questions affecting individual members of the Putative Class. In addition, CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS denies that Plaintiff's claims are typical of the claims of the Putative Class. CCS refers all questions of law to the Court.**

53.     Superiority: A class action in this case would be superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Radius, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the judicial system. By contrast, the class action device presents far fewer management

difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**ANSWER: Denied.**

## COUNT I — FAIR DEBT COLLECTION PRACTICES ACT

54.     Plaintiff re-alleges the above paragraphs as if set forth fully in this count.

**ANSWER: No response is required to this paragraph as Plaintiff is merely incorporating his allegations from prior paragraphs by reference. To the extent that a response is deemed necessary, CCS incorporates its responses to Paragraphs 1 through 53 as though fully set forth herein at length.**

55.     CMS violated § 1692c(b) of the FDCPA by communicating with its mass-mailer vendor information about the debt in connection with the collection of that debt.

**ANSWER: Denied.**

56.     CSS used an unfair practice to collect or attempt to collect a debt, in violation of 15 U.S.C. §-.1692f(8), when it sent Plaintiff a collection letter that contained symbols other than its address or business name on the envelope.

**ANSWER: Denied.**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and the Classes and against CMS as follows:

> A.     Certification of the proposed Class;
>
> B.     Designation of Plaintiff as representative of the proposed Class and designation of Plaintiffs counsel as Class counsel;
>
> C.     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

D.     Costs and reasonable attorney fees pursuant to 15 U.S.C. §
       1692k(a)(3); and

E.     Such other or further relief as the Court deems proper.

**ANSWER: Defendant denies that Plaintiff is entitled to any such relief.**

<u>**JURY DEMAND**</u>

Plaintiff demands trial by jury.

**ANSWER: CCS admits that Plaintiff requests a trial by jury but denies that
any such trial is available in the absence of any viable claims under the
FDCPA.**

<u>**AFFIRMATIVE DEFENSES**</u>

<u>**FIRST AFFIRMATIVE DEFENSE**</u>

Plaintiff fails to state a claim upon which relief may be granted. CCS did
not violate the FDCPA in the course of its collection efforts to recover on a valid
and delinquent debt obligation owed to Labcorp, did not improperly
communicate with a third party in connection with the collection of a debt and
did not use any language or symbol on an envelope in violation of the FDCPA.
Therefore, Plaintiff's claims against CCS under the FDCPA should be dismissed
or withdrawn.

<u>**SECOND AFFIRMATIVE DEFENSE**</u>

At all times relevant hereto, CCS acted in good faith and with good cause
and has not violated any rights which may be secured to Plaintiff under any
federal, state, city, or local laws, rules, regulations, codes, or guidelines.

## THIRD AFFIRMATIVE DEFENSE

CCS at all times complied with the Health Insurance Portability and Accountability Act and Health and Human Services HIPAA Privacy Regulations implemented thereunder. CCS did not invade Plaintiff's privacy, as any ministerial transfer of electronic data to its vendor complied with the privacy standards established by the federal government.

## FOURTH AFFIRMATIVE DEFENSE

The secure electronic transmission of data to CCS' agent, a letter vendor, does not violate the FDCPA as it is not a communication in connection with the collection of a debt. Therefore, CCS did not violating Section 1692c(b) of the FDCPA. *See* FTC staff commentary, Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02, 50104, 1988 WL 269068 (F.R.) (Dec. 13 1988) ("A debt collector may contact an employee of a telephone or telegraph company in order to contact the consumer, without violating the prohibition on communication to third parties, if the only information given is that necessary to enable the collector to transmit the message to, or make the contact with, the consumer"); *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) ("The Fair Debt Collection Practices Act is not aimed at … companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters"); *see also* CFPB Regulation F, 85 Fed. Reg. 76734-01, 2020 WL 7014904 (F.R.) (Nov. 30, 2020) ("the Bureau understands that debt collectors can reduce the number of calls needed to establish an [right party contact] by purchasing higher-quality

contact information from data vendors"); 86 Fed. Reg. 5766-01 n.446, 2021 WL
155534 (Jan. 19, 2021) (recognizing, with approval, that "over 85 percent of debt
collectors surveyed by the Bureau reported using letter vendors").

## FIFTH AFFIRMATIVE DEFENSE

The secure transmission of data from computer server to computer server
does not violate the FDCPA, as there is no human review or intervention or
disseminated to the public. Therefore, there is no basis for "invasion of privacy"
claims.

## SIXTH AFFIRMATIVE DEFENSE

The plain text of the FDCPA contemplates the use of third-party vendors.
Congress specifically approved of the use of vendors and the electronic transfer
of information to vendors as conduct that did not violate the FDCPA. Although a
debt collector is prohibited from communication with third parties in connection
with the collection of any debt, a debt collector is not prohibited from
communicating with a third party "with respect to" or "regarding" a debt.
Congress approved the transfer of data to vendors in the body of the FDCPA. *See*
15 U.S.C. §§ 1692b(5), 1692f(5) & 1692f(8), permitting the use of telegrams. To
argue a distinction between the transfer of data to a telegram company versus
the same transfer of data to a letter vendor is disingenuous. Therefore, the
argument that a debt collector runs afoul of the FDCPA in connection with a
communication "with respect to" or "regarding" a debt (*i.e.*, the transfer of data
to a letter vendor), as opposed to a communication in connection with the

collection of a debt to a true third party (*i.e.*, family members, employers, friends or neighbors) lacks any basis on law or fact.

## SEVENTH AFFIRMATIVE DEFENSE

The secure electronic transmission of electronic information from computer server to computer server does not interfere with or impinge on consumer protections and therefore, is protected under the First Amendment.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint does not allege facts sufficient to rise to the level of conduct required to recover statutory damages under the FDCPA, thus all requests for statutory damages thereunder are improper.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has failed to show any violation of the FDCPA, and, therefore, is not entitled to attorney's fees or costs.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover any damages, or any recovery awarded should be reduced by the amount of damages that reasonably could have been avoided, because Plaintiff failed to take reasonable steps to mitigate the damages with respect to the matters alleged in the Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

The conduct of CCS at all times complied with all applicable statutes, regulations and laws; accordingly, the complaint and each purported cause of action alleged therein against CCS is barred.

## TWELFTH AFFIRMATIVE DEFENSE

In the event that Plaintiff is able to adequately plead an individual claim under the FDCPA, her individual entitlement to statutory damages is capped at $1,000 per action, not per defendant or per violation. *See Dunn v. Advanced Credit Recovery Inc.*, 2012 U.S. Dist. LEXIS 27205 (S.D.N.Y. Mar. 1, 2012); *Healy v. Midpoint Resolution Group, LLC*, No. 09 Civ. 117S, 2010 U.S. Dist. LEXIS 21865, 2010 WL 890996, at *3 (W.D.N.Y. Mar. 10, 2010); *Dowling v. Kucker Kraus & Bruh, LLP*, 2005 U.S. Dist. LEXIS 11000 (S.D.N.Y. 2005); *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 242 F. Supp. 2d 273, 277 (S.D.N.Y. 2002); *Wiener v. Bloomfield*, 901 F. Supp. 771, 778 (S.D.N.Y. 1995); *Teng v. Metropolitan Retail Recovery*, 851 F. Supp. 61, 69 (E.D.N.Y. 1994); *Donahue v. NFS, Inc.*, 781 F. Supp. 188, 191 (W.D.N.Y. 1991).

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are atypical of her putative class.

## FOURTEENTH AFFIRMATIVE DEFENSE

CCS denies that Plaintiff is entitled to or should recover statutory damages in any amount. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010); *Jerman v. Carlisle*, No. 1:06 CV 1397, 2011 U.S. Dist. LEXIS 40771 (N.D. Ohio Apr. 13, 2011).

## FIFTEENTH AFFIRMATIVE DEFENSE

CCS asserts that an award of statutory damages in the absence of actual damages would exceed the limits of constitutional due process. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996).

### SIXTEENTH AFFIRMATIVE DEFENSE

CCS asserts that the conduct of which Plaintiff complains regarding the use of a letter vendor is expressly authorized by the FDCPA. The FDCPA's authorization of the use of telegrams encompasses the use of print-and-mail vendors.

### SEVENTEENTH AFFIRMATIVE DEFENSE

CCS specially denies that its print-and-mail vendor is a "third party" within the scope of 15 U.S.C. § 1692c(b). The special and confidential relationship between CCS and its letter vendor makes the letter vendor CCS' agent and not a third party.

### EIGHTEENTH AFFIRMATIVE DEFENSE

CCS asserts that its conduct was authorized by Regulation F, 85 Fed. Reg. 76734, 86 Fed. Reg. 5766. Congress granted to the Consumer Financial Protection Bureau the power to promulgate rules implementing the FDCPA. See 15 U.S.C. § 1692(b)(6). Therefore, the Regulation is entitled to *Chevron* deference. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984); *see also* 12 U.S.C. § 5512(b)(4)(B).

### NINETEENTH AFFIRMATIVE DEFENSE

To the extent that 15 U.S.C. § 1692c(b) does not permit debt collectors to use print-and-mail vendors, it constitutes a prior restraint on speech serving no legitimate or compelling governmental interest; therefore, the prohibition violates the First Amendment, U.S. Const. Amend. I. Furthermore, to the extent that the FDCPA seeks to regulate signs, symbols, or words on an envelope that

25

invade no privacy rights and have no ability to cause consumer harm, such regulation is a content-based prior restraint on speech that is prohibited by the First Amendment, U.S. Const. Amend. I.

## TWENTIETH AFFIRMATIVE DEFENSE

If the FDCPA permits a debt collector to use Western Union to transmit correspondence to a consumer but not to use a print-and-mail vendor to perform the same service, then 15 U.S.C. § 1692c(b) is void for vagueness in violation of the Fifth Amendment, U.S. Const. amend. V.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

CCS asserts that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Gruden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *see also Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010). The animating purpose of communicating with a print-and-mail vendor is not to induce payment nor is it to embarrass or harass the consumer; rather, it is to secure the ministerial services of printing, folding, stuffing, sealing, metering and mailing.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

CCS asserts that any attempt to certify a class is barred by the decision in *TransUnion LLC v. Ramirez*, ___ U.S. ___, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021). Any such class lacks Article III standing. To the extent that Plaintiff would seek to establish such standing individual issues would predominate over class issues.

CCS reserves the right to raise any other Affirmative Defenses not previously asserted in this Answer as they may arise through further investigation or discovery.

**WHEREFORE**, Defendant Credit Control Services, Inc., d/b/a Credit Collection Services, prays that this Answer be deemed good and sufficient and that all claims against CCS be dismissed with prejudice; that judgment be granted in favor of Defendant and that the relief requested by Plaintiff be denied and that all costs be taxed to Plaintiff. CCS respectfully requests that the Court award the requested relief as well as such other and further relief as may the Court may deem just and equitable.

Dated: September 3, 2021

> Respectfully submitted,
>
> **GORDON REES SCULLY MANSUKHANI, LLP**
>
> By:  /s/ Brittney Rykovich
>       Brittney B. Rykovich (#6301172)
>       One North Franklin, Suite 800
>       Chicago, IL 60606
>       Phone: (312) 565-1400
>       Fax: (312) 565-6511
>       Email: brykovich@grsm.com
>
> *Attorneys for Defendant, Credit Control*
> *Services, Inc. d/b/a Credit Collection*
> *Services*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 3, 2021, a true and accurate copy of Defendant's Answer with Affirmative Defenses was filed and served upon the following parties and participants via ECF:

Daniel Brown
Main Street Attorney, LLC
P.O. Box 247
Chicago, IL 60690
Ph: 773.453.7410
daniel@mainstreetattorney.com

Michael Wood
Celetha Chatman
Community Lawyers, LLC
980 N. Michigan Ave., Suite 1400
Chicago, IL 60611
Ph: 312.757.1880
Fx: 312.265.3227
cchatman@communitylawyersgroup.com

*Attorneys for Plaintiff*

**GORDON REES SCULLY MANSUKHANI, LLP**

By:    /s/ Brittney Rykovich

*Attorneys for Defendant, Credit Control Services, Inc. d/b/a Credit Collection Services*

28