IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGARITA MALDONADO, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CREDIT CONTROL SERVICES, INC., doing ) <br> Business as CREDIT COLLECTION SERVICES ) <br> ) <br> Defendant. ) | Case No. 21-cv-4481 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's motion to remand [19] this case to the Circuit Court of Cook County, Illinois pursuant to 28 U.S.C. § 1447(c) for lack of federal jurisdiction. For the reasons stated below, Plaintiff's motion to remand [19] is granted. The Clerk is directed to remand this case to the Circuit Court of Cook County for further proceedings. Civil case terminated.

**I.    Background**

Plaintiff Margarita Maldonado ("Plaintiff") incurred a debt for "personal, family and household purchases" that was owed to Laboratory Corporation of America Holdings ("Labcorp"). [1, at 14, ¶ 18.]  When Plaintiff later defaulted on that debt [*id.* at 14, ¶ 20], Defendant Credit Control Services, Inc. ("Defendant"), a debt collection agency doing business as Credit Collection Services, sought to recover the debt on behalf of Labcorp. [*Id.*, at 13, ¶ 13–14.]

On November 11, 2020, Defendant sent Plaintiff a form collection letter seeking to collect her debt. [*Id.*, at 14, ¶ 22; *id.*, at 22.]  The letter conveyed account information, including the amount of debt Plaintiff owed, the identity of Plaintiff's original creditor, and an account number

assigned to Plaintiff. [*Id.*, at 14, ¶ 23.] Because of certain "markings * * * characteristic of" form letters generated by a third-party letter vendor, Plaintiff alleges that Defendant hired such a vendor to create the letter she received. [*Id.*, at 14, ¶ 27–29.] For the third-party letter vendor to "populate[] some or all of [Plaintiff's personal] information into a prewritten template," Defendant must have given the vendor certain personal information about Plaintiff. [*Id.*, at 14–15, ¶ 30–31.] Specifically, Plaintiff alleges that Defendant gave her name, address, status as debtor, details of her account, and other personal information to a third-party letter vendor to create the letter she received. [*Id.*, at 14–15, ¶ 22–33.] Additionally, the letter Plaintiff received was sent in an envelope with a glassine window on the front. [*Id.*, at 16, ¶ 39; *id.*, at 24.] Within the window, various numbers and a bar code could be seen. [*Id.*] Plaintiff does not address the significance of either the numbers or bar code.

On June 29, 2021, Plaintiff filed a putative class action in the Circuit Court of Cook County, Chancery Division, alleging that Defendant's disclosure of her information to a third-party letter vendor violated 15 U.S.C. § 1692, the Fair Debt Collection Practices Act of 1977 ("FDCPA"), which prohibits various abusive debt collection practices. [*Id.*] According to Plaintiff, Defendant violated § 1692c(b) by communicating her personal information with a third-party letter vendor and § 1692f(8) by sending a collection letter with symbols other than Defendant's business name or address on the envelope. [*Id.* at 19, ¶ 55–56.]

On August 23, 2021, Defendant timely removed the action to federal court on the basis of federal question jurisdiction. [1.] On October 29, 2021, Plaintiff moved for remand to Illinois state court on the ground that she lacked Article III standing. [19.]

2

## II. Legal Standard

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action filed in state court to federal court when the action could have been originally filed in federal court. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). The party seeking to remove the action has the burden of demonstrating jurisdiction, including subject-matter jurisdiction. *Id.* The plaintiff's choice of forum is presumed to be valid, and the Court must resolve doubts regarding jurisdiction in favor of remand. *Id.*; *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) ("Courts should interpret the removal statute narrowly and presume that the plaintiff may choose * * * her forum.").

## III. Analysis

The key issue before this Court is whether Plaintiff has Article III standing. Because "[s]tanding is a threshold question in every federal case," the Court must determine whether standing exists before considering the merits of Plaintiff's claim. *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). As Defendant invoked federal jurisdiction by removing this suit to federal court, it has the burden of establishing that Plaintiff has standing. *Schur*, 577 F.3d at 758.

To have Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); see also *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). At issue in the present motion is the first requirement—that Plaintiff suffered an injury-in-fact. An injury-in-fact must be both "concrete and particularized." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). An injury is concrete if it is "real, and not

abstract." *TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo*, 578 U.S. at 340). Both tangible and intangible injuries can qualify as concrete harm. See *id.* at 2205 (citing *Spokeo*, 578 U.S. at 340–41) (recognizing that "[v]arious intangible harms can * * * be concrete," including "reputational harms, disclosure of private information, and intrusion upon seclusion").

To determine whether an intangible injury is sufficiently concrete for standing purposes, the Court must look at history and Congress's judgment. *Spokeo*, 578 U.S. at 340–41. In looking at history, the Supreme Court has observed that courts should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341; see also *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (internal quotations marks and quotation omitted) (observing that when courts seek to analogize to harms recognized at common law, courts are instructed to look for a "close relationship in kind, not degree"); *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1191–92 (7th Cir. 2021) (noting that when a court is determining whether the challenged conduct bears a close relationship to tort comparator, it must look at a single tort comparator, not a group of such comparators like "invasion of privacy" torts).

While Congress can "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," *Spokeo*, 578 U.S. at 341 (quoting *Lujan*, 504 U.S. at 578), the injury-in-fact requirement is not automatically satisfied whenever plaintiff alleges a "bare procedural violation, divorced from any concrete harm," *id.* Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*; see also *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 779 (7th Cir. 2021) (noting that "a breach of the [FDCPA] does not, by itself, cause an injury in fact"). For example, an FDCPA violation might cause concrete harm "if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or

4

otherwise alters a plaintiff's response to a debt." *Markakos*, 997 F.3d at 779 (citing *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020)).

Plaintiff seeks to remand her FDCPA claims to Illinois state court for lack of Article III standing. [19, 21.] Plaintiff contends that she has not suffered a concrete injury-in-fact; rather, Plaintiff argues that she has only alleged a procedural FDCPA violation devoid of any concrete harm. [*Id.*] Defendant counters that Plaintiff's statutory allegations are sufficient to support standing. [20.] According to Defendant, the conduct Plaintiff complains of has a sufficiently close relationship with common law invasion of privacy torts to constitute an injury-in-fact. [*Id.*] Because Plaintiff alleges two FDCPA violations, the Court takes each claim in turn.

### A. Transmission of Information to a Third-Party Letter Vendor – Alleged Violation of § 1692c(b)

In her complaint, Plaintiff alleges that Defendant violated § 1692c(b). [1, at 19, ¶ 55.] Section 1692c(b) prohibits a debt collector from communicating "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" without "the prior consent of the consumer given directly to the debt collector." 15 U.S.C. § 1692c(b). Plaintiff alleges Defendant violated this subsection by communicating her "personal and confidential information" to a third-party letter vendor. [1, at 15, ¶ 33.]

In their briefs [19–21], both parties cite the Eleventh Circuit's decision in *Hunstein v. Preferred Collection & Management Services, Inc.*, 994 F.3d 1341 (11th Cir.) ("*Hunstein I*"), and *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 4th 1016 (11th Cir. 2021), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021) ("*Hunstein II*"), and the current intra-district split as guidance for this Court's decision. Compare *Keller v. Northstar Location Servs.*, 2021 WL 3709183 (N.D. Ill. Aug. 20, 2021); *Thomas v. Unifin, Inc.*, 2021 WL 3709184 (N.D. Ill.

5

Aug. 20, 2021); *Liu v. Radius Glob. Solutions, LLC*, 2021 WL 4167585 (N.D. Ill. Sept. 14, 2021); and *Liu v. Pioneer Credit Recovery Inc.*, No. 1:21-cv-2875, Dkt. 23 (N.D. Ill. Dec. 3, 2021); with *Quaglia v. NS193, LLC*, 2021 WL 7179621 (N.D. Ill. Oct. 12, 2021); *Liu v. MRS BPO, LLC*, 2021 WL 5630764 (N.D. Ill. Nov. 30, 2021); *Rembert v. Am. Coradius Intl., LLC*, 2022 WL 1211510 (N.D. Ill. April 25, 2022); *Patni v. Resurgent Cap. Servs., L.P.*, 2022 WL 1567069 (N.D. Ill. May 18, 2022); and *Blaise v. Transworld Sys. Inc.*, 2022 WL 3927746 (N.D. Ill. Aug. 30, 2022). Because the parties' briefs precede important caselaw developments, some additional background is necessary.

The Seventh Circuit has not addressed whether a plaintiff alleging a similar § 1692c(b) claim has standing.[1] Several courts in this District have looked to the Eleventh Circuit's decisions in *Hunstein I* and *Hunstein II* for guidance. *Keller*, 2021 WL 3709183, at *2; *Thomas*, 2021 WL 3709184, at *1–2; *Radius Glob. Solutions*, 2021 WL 4167585, at *2; *Pioneer Credit*, No. 1:21-cv-2875, Dkt. 23, at *5–6. In *Hunstein I*, the plaintiff alleged that a debt collector violated § 1692c(b) by disclosing her personal information to a third-party letter vendor, who thereby populated a form collection letter with that information. *Hunstein I*, 994 F.3d at 1344. The Eleventh Circuit reasoned that because § 1692c(b) bore a close relationship to the common law tort of public disclosure of private facts and Congress's judgment indicated that violations of § 1692c(b) constitute a concrete injury, the plaintiff had standing to sue. *Id.* at 1347–49.

However, after the Eleventh Circuit's decision in *Hunstein I*, the Supreme Court decided *TransUnion*. 141 S. Ct. at 2190. In *TransUnion*, a group of individual consumers alleged that a

---

[1] While the Seventh Circuit has not directly spoken on claims such as Plaintiff's, it has noted when the FDCPA has been used in contravention of its intended purposes, including against third-party companies performing ministerial duties. See, *e.g.*, *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (citations omitted) (labelling as "frivolous" FDCPA claims against "companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters").

credit reporting agency violated the Fair Credit Reporting Act ("FRCA") when it sent false notices to third parties that the consumers were potential threats to national security and failed to use reasonable procedures to ensure the accuracy of its credit files, including maintaining the false notices internally. *Id.* at 2200–02. The Supreme Court found that plaintiffs whose credit reports had been disclosed to third parties had standing because their harm was akin to the reputational harm associated with defamation. *Id.* at 2208–09. On the other hand, the Supreme Court held that plaintiffs whose credit reports had not been disclosed to any third parties lacked standing because the mere existence of inaccurate information not disseminated to third parties did not harm them. *Id.* at 2209–12. Finally, and particularly relevant to this Court's decision, the Supreme Court observed that:

> the plaintiffs also argue that TransUnion "published" the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received. That new argument is * * * unavailing. Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to printing vendors as actionable publications.

*Id.* at 2210 n.6.

In the wake of *TransUnion*, many courts within this District have held that plaintiffs alleging a violation of § 1692c(b) under similar facts as Plaintiff here did not allege sufficient injury-in-fact for standing purposes. *Quaglia*, 2021 WL 7179621, at *3; *MRS BPO, LLC*, 2021 WL 5630764, at *4; *Rembert*, 2022 WL 1211510, at *2; *Patni*, 2022 WL 1567069, at *1; *Blaise*, 2022 WL 3927746, at *6. After *TransUnion*, the Eleventh Circuit initially maintained its prior holding that the plaintiff had standing. *Hunstein II*, 17 F.4th at 1020; see also *Pioneer Credit*, No. 1:21-cv-2875, Dkt. 23, at *5–6 (relying on *Hunstein II* prior to its later vacation for rehearing *en banc*). However, the Eleventh Circuit later vacated its decision and reheard the case *en banc*. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1103, 1104 (11th Cir. 2021).

After briefing on the instant motion was complete, the Eleventh Circuit issued its new *en banc* opinion, holding that the plaintiff alleging a violation under § 1692c(b) on similar facts lacked standing. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, — F.4th —, 2022 WL 4102824, at *6 (11th Cir. 2022) ("*Hunstein III*"). Citing to the Supreme Court's discussion of publicity in the context of defamation in *TransUnion*, the Eleventh Circuit concluded that the plaintiff failed to allege an element "essential to liability" under the comparator tort of public disclosure of private facts: publicity. *Id.* at *2, 6–7. The Eleventh Circuit defined "publicity" as denoting the dissemination of private information to "the public" at large, expressly noting the difference between private and public disclosure of private information as "qualitative, not quantitative." *Id.* at *10. The Eleventh Circuit then reasoned that the debt collector's disclosure of the plaintiff's information to a "single intermediary"—the third-party letter vendor—did not qualify as "publicity" and the plaintiff's alleged violation of § 1692c(b) thus lacked a "close relationship" to the comparator tort. *Id.* at *8. As such, the plaintiff had alleged a statutory violation without concrete harm and therefore lacked standing. *Id.* at *6–9.

With this caselaw in mind and for many of the same reasons relied on by other judges within this District, Defendant cannot show that Plaintiff suffered injury-in-fact sufficient to support Article III standing. Therefore, this Court lacks subject matter jurisdiction over Plaintiff's § 1692c(b) claim.

First, as noted above, *Hunstein I* and *Hunstein II*, which courts within this District relied on to conclude that plaintiffs alleging similar violations had standing and Defendant relies on [20, at 7–8], have been vacated and reversed, with the *en banc* Eleventh Circuit holding that such plaintiffs lack standing. *Hunstein III*, 2022 WL 4102824, at *10. This point is underscored by the Supreme Court's treatment of a similar theory in *TransUnion*. 141 S. Ct. at 2210 n.6. Indeed, as

the court in *Quaglia* noted, the Supreme Court in *TransUnion* appeared to reject Plaintiff's theory. *Quaglia*, 2021 WL 7179621, at *4 (internal quotation omitted) (noting that the Supreme Court's discussion of mailing vendor theory "appears dispositive").

Second, Plaintiff's alleged violation does not have a close relationship with a comparator tort because Plaintiff does not allege publicity. As Plaintiff suggests [21, at 3], the closest common law analog to Defendant's alleged violation of § 1692c(b) is public disclosure of private facts. See RESTATEMENT (SECOND) OF TORTS § 652D (1977) ("One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."). While Plaintiff focuses on the highly offensive element of public disclosure of private facts [21, at 3], the Court, like other courts within this District, focuses on the initial requirement of publicity. As other courts have noted, an essential element to liability for public disclosure of private facts is publicity, which is not satisfied by the transmission of information to a third-party letter vendor for the ministerial purpose of printing a form collection letter. *MRS BPO, LLC*, 2021 WL 5630764, at *4; *Patni*, 2022 WL 1567069, at *2; *Blaise*, 2022 WL 3927746, at *5–6. This Court agrees with this reasoning. In her complaint, Plaintiff has alleged that Defendant disclosed her personal information to a single party, a third-party letter vendor, for the ministerial purpose of creating a form collection letter. [1, at 14–15, ¶ 19.] This is not a "public" disclosure of private facts. Rather, as the court in *Blaise* put it, Plaintiff's allegations are "just a communication with a mail vendor, which is not a harm at which Congress aimed by enacting the FDCPA." *Blaise*, 2022 WL 3927746, at *6. Because Plaintiff's alleged violation of § 1692c(b) does not have "a close relationship to a harm that has traditionally

been regarded as providing a basis for a lawsuit in English or American courts," Plaintiff has not alleged concrete harm sufficient for standing. *Spokeo*, 578 U.S. at 341.

Third, legislative history indicates that Plaintiff's alleged violation runs afoul of the FDCPA's intended purpose. The FDCPA was intended to prevent abusive collection procedures, including "disclos[ure of] a consumer's personal affairs to friends, neighbors, or an employer." *Quaglia*, 2021 WL 7179621, at *3 (citing S. Rep. No. 95–382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696)). As the court in *Quaglia* noted, it "is difficult to imagine Congress intended for the FDCPA to extend so far as to prevent debt collectors from enlisting the assistance of mailing vendors to perform ministerial duties, such as printing and stuffing the debt collectors' letters, in effectuating the task entrusted to them by the creditors—especially when so much of the process is presumably automated in this day and age." *Quaglia*, 2021 WL 7179621, at *3. The Court agrees that a violation like Plaintiff's lies well outside the scope of the FDCPA.

For these reasons, the Court holds that Plaintiff did not suffer an injury-in-fact sufficient for standing to assert her claim under § 1692c(b). Therefore, the Court lacks subject matter jurisdiction and remands the claim to Illinois state court.

> **B.** Use of Symbols or Numbers Other than Business Name and Address – Alleged Violation of § 1692f(8)

Plaintiff also alleges that Defendant violated § 1692f(8). [1, at 19, ¶ 56.] Under § 1692f(8), "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," including "[u]sing any language or symbol, other than the debt collector's address" and the "business name if such name does not indicate that he is in the debt collection business" on "any envelope when communicating with a consumer by use of the mails or by telegram." 15 U.S.C. § 1692f(8). In her complaint, Plaintiff alleges that Defendant violated this subsection "when it sent Plaintiff a collection letter that contained symbols other than its address or business name on

10

the envelope." [1, at 19, ¶ 56.] In the instant motion, Plaintiff argues that she lacks standing because she did not allege that the information revealed in the glassine window of the envelope—the numbers and bar code visible therein—contained private information. [19, at 3–4; 21, at 1–2.] Defendant argues that the Court should infer that the numbers and bar code contain "encoded information concerning what Plaintiff says is her confidential information" and that "potential public disclosure of private facts" is sufficient for standing purposes. [20, at 11–12.]

The Court agrees with Plaintiff that she lacks standing because Defendant failed to demonstrate that the information disclosed on the envelope—numbers and a bar code—was, in fact, private. At the outset, the Court rejects Defendant's argument that the risk of "potential public disclosure of private facts" is sufficient for standing. Even if Plaintiff had alleged such a risk, the Supreme Court has clarified that a risk of harm constitutes an injury-in-fact in the context of a request for injunctive relief, not a claim for damages. *TransUnion*, 141 S. Ct. at 2210–11. As Plaintiff only seeks statutory damages [1, at 19], Defendant's argument fails.

Defendant's call for the Court to infer that the numbers and bar code on the envelope that Plaintiff received contained "encoded information concerning what Plaintiff says is her confidential information" is similarly unavailing. [20, at 11–12.] As noted above, a "disclosure of private information" is an intangible harm that can be deemed concrete for standing purposes. *TransUnion*, 141 S. Ct. at 2204. However, an integral part of such a disclosure is that the information is in fact *private*. Defendant cannot ascribe any meaning, private or otherwise, to the numbers and bar code on the front of the envelope it sent to Plaintiff. *Schur*, 577 F.3d at 758.

Other cases within this District holding that similar disclosures fail to demonstrate concrete injury for standing purposes support this Court's decision. For instance, in *Lueck v. Bureaus, Inc.*, a plaintiff alleged that an envelope marked "Personal & Confidential" inflicted a concrete injury

11

to her privacy interest because it broadcast to anyone who saw the envelope that she was a debtor. 2021 WL 4264368, at *4 (N.D. Ill. Sept. 20, 2021). The court disagreed, observing that the envelope did not disseminate "information in which a person has a right to privacy." *Id.* at *5 (citing *Guabala v. Time Warner Cable, Inc.*, 846 F.3d 909, 910 (7th Cir. 2017) (cleaned up)). The court noted that it would not be clear to anyone viewing the envelope the purpose of the communication within, much less that it contained a debt collection letter. *Id.*; see also *Brewer v. L. Offs. of Mitchell D. Blum & Assocs., LLC*, 2021 WL 5140476, at *1 (N.D. Ill. Nov. 4, 2021) (holding that the debtor plaintiff lacked standing to assert a § 1692f(8) violation because the information disclosed—a portion of his account number—did not convey private information); *Avina v. Radius Glob. Sols., LLC*, 2021 WL 6752293, at *1 (N.D. Ill. Nov. 4, 2021) (holding that the debtor plaintiff lacked standing to assert a § 1692f(8) violation because the information disclosed on the envelope—"Mail Code DSNB"—did not reveal anything private about the plaintiff); *Blaise v. Transworld Sys. Inc.*, 2022 WL 3927746, at *6 (N.D. Ill. Aug. 30, 2022) (holding that the debtor plaintiff did not have standing to allege a § 1692f(8) violation when an envelope displayed her email address as the plaintiff's email address "d[id] not relate to the collection of her debt or identify her as a debtor"). Simply put, the envelope did not disseminate private information within the meaning of the tort comparator and therefore the plaintiff failed to allege injury-in-fact sufficient for standing purposes. *Lueck*, 2021 WL 4264368, at *5–6.

The facts in this case are similar. Nothing about the visible numbers or bar code on the envelope that Plaintiff received suggest that the letter within dealt with debt collection or even information implicating Plaintiff's privacy rights. [1, at 24.] The relatively non-descript envelope that Plaintiff received could contain a variety of information, private or otherwise. [*Id.*] It would not be clear to anyone viewing the envelope, whether that person was the third-party letter vendor

creating the envelope or the postal worker delivering it, that Plaintiff was a debtor. Indeed, neither Plaintiff nor Defendant can even identify what the numbers or bar code mean. At bottom, Plaintiff alleges a bare procedural violation, divorced from any concrete harm. *Spokeo*, 578 U.S. at 341. Accordingly, Defendant has failed to show that Plaintiff's alleged violation of § 1692f(8) deals with a disclosure of private information such that it bears a close relationship to a tort comparator sufficient for standing.

For these reasons, the Court holds that Plaintiff did not suffer an injury-in-fact sufficient for standing to assert her claim under § 1692f(8).

## V.     Conclusion

For the reasons discussed in this Memorandum Opinion and Order, the Court concludes that Plaintiff's Motion to Remand [19] must be granted. The Clerk is directed to remand this case to the Circuit Court of Cook County for further proceedings. Civil case terminated.

Dated: September 26, 2022

_____
Robert M. Dow, Jr.
United States District Judge